```
                                        ┌─────────────────────────┐
                                        │          FILED          │
                                        │ CLERK, U.S. DISTRICT COURT │
                                        │  ┌───────────────────┐  │
                                        │  │    4/29/2021      │  │
                                        │  └───────────────────┘  │
                                        │ CENTRAL DISTRICT OF CALIFORNIA │
                                        │ BY:        JB      DEPUTY │
                                        └─────────────────────────┘
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

April 2021 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>ABDULRAHMAN IMRAAN JUMA,<br>　aka "Abdul,"<br>　aka "Rahman,"<br>KELLY CHIBUZO VINCENT,<br>　aka "Vincent Kelly Chibuzo,"<br>ABBA ALHAJI KYARI,<br>RUKAYAT MOTUNRAYA FASHOLA,<br>　aka "Morayo,"<br>BOLATITO TAWAKALITU AGBABIAKA,<br>　aka "Bolamide,"<br>YUSUF ADEKINKA ANIFOWOSHE,<br>　aka "AJ,"<br>　aka "Alvin Johnson,"<br><br>　　　　Defendants. | CR　　2:21-cr-00203-RGK<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1349: Conspiracy to<br>Commit Wire Fraud; 18 U.S.C.<br>§ 1956(h): Conspiracy to Engage in<br>Money Laundering; 18 U.S.C.<br>§ 1028A(a)(1): Aggravated Identity<br>Theft; 18 U.S.C. § 2(a): Aiding<br>and Abetting; 18 U.S.C. §§ 981,<br>982, and 1028 and 28 U.S.C.<br>§ 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

<u>INTRODUCTORY ALLEGATIONS</u>

At times relevant to this Indictment:

A.  Defendants

1.  Defendant ABDULRAHMAN IMRAAN JUMA, also known as ("aka") "Abdul," aka "Rahman" ("JUMA"), was a resident of the Republic of Kenya ("Kenya").

2.  Defendant KELLY CHIBUZO VINCENT, aka "Vincent Kelly Chibuzo" ("VINCENT"), and defendant ABBA ALHAJI KYARI ("KYARI") were residents of the Federal Republic of Nigeria ("Nigeria").

3.  Defendant RUKAYAT MOTUNRAYA FASHOLA, aka "Morayo" ("FASHOLA"), defendant BOLATITO TAWAKALITU AGBABIAKA, aka "Bolamide" ("AGBABIAKA"), and defendant YUSUF ADEKINKA ANIFOWOSHE, aka "AJ," aka "Alvin Johnson" ("ANIFOWOSHE"), were residents of New York State.

B.  Victim

4.  The "Victim Businessperson" resided in the State of Qatar ("Qatar").

5.  The "Qatari Victim Company" was a company founded by the Victim Businessperson to build an international school for children in Qatar.

C.  Bank Accounts

6.  The "Capital One Account" was a bank account of defendant AGBABIAKA, with an account number ending in 2389, at Capital One Bank USA, NA, held in Staten Island, New York.

7.  The "Kenyan Bank Account" was the bank account of a law firm at the Co-operative Bank of Kenya, in Kenya.

8.  The "Qatari Bank Account" was a bank account of the Qatari Victim Company at Qatar National Bank ("QNB"), in Qatar.

9.  "TD Bank Account 1" was a bank account of defendant AGBABIAKA, with an account number ending in 1471, at TD Bank, NA ("TD Bank"), held in Staten Island, New York.

10.  "TD Bank Account 2" was a bank account of an unindicted coconspirator, with an account number ending in 0789, at TD Bank, held in Brooklyn, New York.

11.  The "Wells Fargo Account 1" was a bank account of an unindicted coconspirator, with an account number ending in 5320, at Wells Fargo Bank, NA ("Wells Fargo"), held in Canoga Park, California.

12.  "Wells Fargo Account 2" was a bank account, with an account number ending in 6742, at Wells Fargo, held in Tallahassee, Florida.

COUNT ONE

[18 U.S.C. § 1349]

13.   The Grand Jury re-alleges and incorporates here paragraphs 1 through 12 of the Introductory Allegations of this Indictment.

A.   OBJECT OF THE CONSPIRACY

14.   Beginning no later than on or about November 11, 2019, and continuing until on or about April 26, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendants ABDULRAHMAN IMRAAN JUMA, also known as ("aka") "Abdul," aka "Rahman" ("JUMA"), KELLY CHIBUZO VINCENT, aka "Vincent Kelly Chibuzo" ("VINCENT"), ABBA ALHAJI KYARI ("KYARI"), RUKAYAT MOTUNRAYA FASHOLA, aka "Morayo" ("FASHOLA"), BOLATITO TAWAKALITU AGBABIAKA, aka "Bolamide" ("AGBABIAKA"), and YUSUF ADEKINKA ANIFOWOSHE, aka "AJ," aka "Alvin Johnson" ("ANIFOWOSHE"), and unindicted coconspirator #1 ("UICC 1"), unindicted coconspirator Ramon Olorunwa Abbas ("UICC Abbas"), unindicted coconspirator #3 ("UICC 3"), unindicted coconspirator #4 ("UICC 4"), unindicted coconspirator #5 ("UICC 5"), and unindicted coconspirator #6 ("UICC 6"), together with others known and unknown to the Grand Jury, knowingly conspired to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

15.   The object of the conspiracy was to be accomplished, in substance, as follows:

a.   UICC 1 would refer a victim to defendant JUMA, who would, in turn, falsely claim that he would provide a loan sought by the victim, through a company defendant JUMA owned in Kenya.

4

b.   Defendant JUMA would meet with the victim and falsely promise to provide the loan to the victim in exchange for a consultancy fee paid by wire transfer to a bank account in Kenya.

c.   After the victim paid the consultancy fee and other fees requested by defendant JUMA, defendant JUMA would provide the victim with forged and fraudulent paperwork that would make it appear that the loan had been paid to the victim's bank account.

d.   Defendant JUMA would then instruct the victim that additional payments, to be paid by wire transfer to a bank account in Kenya, would be needed to secure the loan.

e.   In coordination with defendant JUMA, UICC Abbas would interact with the victim, fraudulently claiming to be a director of a U.S. bank that would assist in transferring the loan to the victim.

f.   Defendant JUMA and UICC Abbas would devise false stories and artifices -- some created by defendant VINCENT and other coconspirators -- to induce the victim to send additional payments to bank accounts in the United States and Kenya.

g.   UICC Abbas would arrange for coconspirators, including defendant ANIFOWOSHE and UICC 3, to take steps to further the false stories and artifices, to trick the victim into paying additional funds.  These steps would include pretending to be an employee of a U.S. bank, filing a Fictitious Business Name Statement with the Los Angeles County Registrar-Recorder/County Clerk's Office, and opening a bank account in Los Angeles County.

h.   UICC Abbas would ask defendants FASHOLA and AGBABIAKA to identify bank accounts in the United States that could receive payments from the victim.

i.    Defendants FASHOLA and AGBABIAKA would negotiate with coconspirators about the coconspirators' terms for use of their bank accounts to receive funds from the victim.  When defendant FASHOLA or defendant AGBABIAKA located a bank that could be used to receive funds from the victim, they would send UICC Abbas a message or messages (a) about the terms demanded by the accountholder, and (b) containing information about the bank account, such as the name of the accountholder, the bank account number, the routing number, and the Society for Worldwide Interbank Financial Telecommunication ("SWIFT") code.  At times, defendant AGBABIAKA would provide UICC Abbas with information regarding her own bank account, which she would provide to UICC Abbas to be used to receive funds from the victim.

j.    After UICC Abbas had selected a bank account in the United States to receive a fraudulent payment from the victim, defendant JUMA and UICC Abbas would communicate the account information to the victim, and defendant JUMA and UICC Abbas would, through false or fraudulent pretenses, representations, and promises, and concealment of material facts, cause the victim to deposit, wire, or transfer funds into the bank account that had been identified.

k.    After the victim had wire transferred funds to a bank account in the United States, UICC Abbas would arrange with defendants FASHOLA and AGBABIAKA, and UICC 5 and UICC 6, to withdraw the fraudulently obtained funds from the bank account through (i) wire transfers and teller transfers to other accounts, (ii) the issuance of cashier's checks, and (iii) cash withdrawals in order to obtain the money and so as to conceal and disguise the nature, location, source, ownership, and control of the proceeds.

1           l.   Defendants FASHOLA and AGBABIAKA, and UICC 4, would

2  also, at times, help UICC Abbas purchase items of value with funds

3  fraudulently obtained from the victim.  Defendants FASHOLA,

4  AGBABIAKA, and ANIFOWOSHE, with UICC 5, would, at times, assist UICC

5  Abbas in transporting those items of value to him in the United Arab

6  Emirates ("U.A.E.").

7           m.   At UICC Abbas's request, defendant AGBABIAKA would, at

8  times, deposit funds, or cause funds to be deposited, into the bank

9  account of an illicit and unlicensed money exchanger, who would then

10  transfer other funds from a Nigerian bank account that he or she

11  controlled to a Nigerian bank account of a coconspirator specified by

12  UICC Abbas, so that UICC Abbas could obtain the victim's funds.

13           n.   When a person, such as a former coconspirator, would

14  contact the victim directly without the approval of defendant JUMA

15  and UICC Abbas -- thereby jeopardizing the success of defendant

16  JUMA's and UICC Abbas' scheme -- UICC Abbas would arrange to have

17  defendant KYARI arrest the former coconspirator and hold the person

18  in jail.  UICC Abbas would arrange payment to defendant KYARI

19  (i) using a bank account of another person and (ii) making a transfer

20  to a bank account in Nigeria in the name of a person other than

21  defendant KYARI.

22  C.    <u>OVERT ACTS</u>

23    16.  In furtherance of the conspiracy, and to accomplish its

24  objects, defendants JUMA, VINCENT, KYARI, FASHOLA, AGBABIAKA, and

25  ANIFOWOSHE, and UICC 1, UICC Abbas, UICC 3, UICC 4, UICC 5, and UICC

26  6, together with others known and unknown to the Grand Jury, on or

27  about the dates set forth below, committed and caused to be committed

28

various overt acts, in the Central District of California and elsewhere, including, but not limited to, the following:

Overt Act No. 1:   On an unknown date before November 11, 2019, UICC 1 referred the Victim Businessperson's financial advisor to defendant JUMA's company, Westload Financial Solutions Limited, purportedly to assist in arranging a loan to the Qatari Victim Company.

Overt Act No. 2:   On November 12, 2019, during an in-person meeting in Kenya, defendant JUMA falsely told the Victim Businessperson that defendant JUMA's company, Westload Financial Solutions Limited, would provide a $15 million loan to the Qatari Victim Company to aid the construction of an international school in Qatar in exchange for a consultancy fee and other legal fees.

Overt Act No. 3:   On November 13 and 14, 2019, using electronic messages, defendant JUMA fraudulently induced the Victim Businessperson to wire transfer approximately $164,450, in approximately four transactions, from the Qatari Bank Account to the Kenyan Bank Account.

Overt Act No. 4:   On December 1, 2019, through an electronic message, defendant JUMA sent the Victim Businessperson a forged and fraudulent wire transfer confirmation purporting to show that $15 million had been transferred from a bank account in the United Kingdom to the Qatari Bank Account.

Overt Act No. 5:   On December 5, 2019, after the Victim Businessperson learned that the Qatari Bank Account had not received the purported $15 million wire transfer, defendant JUMA told the Victim Businessperson that the Victim Businessperson would need to

pay an additional fee of $150,000 to secure the release of the loan funds.

Overt Act No. 6:   On December 6 and 7, 2019, using electronic messages, defendant JUMA fraudulently induced the Victim Businessperson to wire transfer approximately $150,000, in approximately four transactions, from the Qatari Bank Account to the Kenyan Bank Account.

Overt Act No. 7:   On December 10, 2019, defendant JUMA and UICC Abbas, using electronic messages, agreed that UICC Abbas would pose in communications with the Victim Businessperson as a director of a bank that would be involved in releasing the loan funds that the Victim Businessperson expected to receive.

Overt Act No. 8:   On December 11, 2019, defendant JUMA and UICC Abbas, using electronic messages, discussed with each other what amount of the funds fraudulently obtained from the Victim Businessperson UICC Abbas would receive for his involvement in the scheme.

Overt Act No. 9:   On December 11, 2019, UICC Abbas sent electronic messages to the Victim Businessperson introducing himself as "Malik," a director at Wells Fargo.

Overt Act No. 10:   On December 16, 2019, defendant ANIFOWOSHE and UICC Abbas discussed, by phone and electronic messages, a plan for defendant ANIFOWOSHE to call the Victim Businessperson in which defendant ANIFOWOSHE, who spoke English with a less strong accent than did UICC Abbas, would pose as a bank executive from New York.

Overt Act No. 11:   On December 16, 2019, at the request of UICC Abbas, defendant ANIFOWOSHE called the Victim Businessperson, posing as a bank executive from New York.

1    <u>Overt Act No. 12:</u>  On December 17, 2019, acting upon the
2    request of UICC Abbas, UICC 3 filed a Fictitious Business Name
3    Statement with the Los Angeles County Registrar-Recorder/County
4    Clerk's Office in the name of the Qatari Victim Company.

5    <u>Overt Act No. 13:</u>  On December 17, 2019, UICC Abbas arranged to
6    have UICC 3 open Wells Fargo Account 1 at a Wells Fargo branch in
7    Canoga Park, California, using the name of the Qatari Victim Company
8    as the business name of the bank account.

9    <u>Overt Act No. 14:</u>  On December 19, 2019, using electronic
10   messages, UICC Abbas sent defendant VINCENT the names of the Victim
11   Businessperson, the Qatari Victim Company, and UICC 3, and a
12   photograph of the Fictitious Business Name Statement filed by UICC 3.

13   <u>Overt Act No. 15:</u>  On December 19, 2019, after defendant
14   VINCENT created and sent a false and fictitious "Durable Power of
15   Attorney" document to UICC Abbas, UICC Abbas sent the document to the
16   Victim Businessperson in an electronic message.

17   <u>Overt Act No. 16:</u>  On December 19, 2019, UICC Abbas
18   communicated with defendant AGBABIAKA about a bank account that could
19   receive funds that were to be fraudulently obtained from the Victim
20   Businessperson.

21   <u>Overt Act No. 17:</u>  On December 19, 2019, defendant AGBABIAKA
22   sent UICC Abbas electronic messages containing the account
23   information for the Capital One Account, including the account
24   number, the routing number, the bank's address, and defendant
25   AGBABIAKA's home address.

26   <u>Overt Act No. 18:</u>  On December 20, 2019, defendant JUMA and
27   UICC Abbas discussed with each other their plan to have the Victim

28

1 Businessperson pay an additional £250,000 to fund a purported
2 "investor's account" in the United Kingdom.

3     Overt Act No. 19:   On December 21, 2019, defendant ANIFOWOSHE
4 and UICC Abbas discussed, by phone and electronic messages, a plan
5 for defendant ANIFOWOSHE to call to the Victim Businessperson, again
6 posing as a bank executive from New York.

7     Overt Act No. 20:   On multiple dates in December 2019,
8 including December 24, 2019, UICC Abbas negotiated with a watch
9 seller for the purchase of and payment for a rose gold and titanium
10 Richard Mille RM 11-03 watch, which payment was to be directed to
11 Wells Fargo Account 2.

12     Overt Act No. 21:   On December 24, 2019, UICC Abbas sent the
13 Victim Businessperson electronic messages containing the account
14 information -- including the accountholders' names and addresses, the
15 account numbers, the routing numbers, and the SWIFT codes -- for the
16 Capital One Account and Wells Fargo Account 2, and provided
17 instructions that the Victim Businessperson should wire transfer a
18 total of $330,000 to the accounts.

19     Overt Act No. 22:   On December 26, 2019, after the Capital One
20 Account received a wire transfer of $100,000 from the Victim
21 Businessperson's Qatari Bank Account, defendant AGBABIAKA withdrew
22 approximately $7,100 from the Capital One Account to provide to an
23 illicit currency exchanger who would then transfer Nigerian Naira to
24 a Nigerian bank account specified by UICC Abbas.

25     Overt Act No. 23:   On December 26, 2019, UICC Abbas asked
26 defendant AGBABIAKA, through an electronic message, to exchange an
27 additional $20,000 using an illicit currency exchanger.

28

1   Overt Act No. 24:   On December 26, 2019, UICC Abbas sent

2   defendant ANIFOWOSHE electronic messages containing a photograph of a

3   wire transfer confirmation showing a $230,000 wire by the Victim

4   Businessperson to Wells Fargo Account 2; a photograph of a Richard

5   Mille RM 11-03 watch; and a screenshot of a banking application

6   displaying the balance of the Capital One Account as $100,058.31.

7   Overt Act No. 25:   On December 26, 2019, after UICC Abbas sent

8   an electronic message to defendant ANIFOWOSHE saying that he was

9   "[t]hinking what to buy" with the $100,000 in the Capital One

10   Account, UICC Abbas and defendant ANIFOWOSHE discussed whether UICC

11   Abbas should purchase an Audemars Piguet Skeleton watch.

12   Overt Act No. 26:   On December 27, 2019, defendant AGBABIAKA

13   withdrew approximately $10,000 from the Capital One Account through a

14   cashier's check, which she deposited into TD Bank Account 1.

15   Overt Act No. 27:   On multiple dates in December 2019,

16   including December 30, 2019, UICC Abbas and UICC 4 sent electronic

17   messages discussing the amount that UICC Abbas would pay to obtain

18   St. Christopher and Nevis ("St. Kitts") citizenship and a passport.

19   Overt Act No. 28:   On December 31, 2019, at the request of UICC

20   Abbas, defendant AGBABIAKA purchased a cashier's check of

21   approximately $40,000 drawn from the Capital One Account, which she

22   then mailed to an address in Georgia specified by UICC 4, to pay for

23   St. Kitts citizenship and a passport for UICC Abbas.

24   Overt Act No. 29:   On January 3, 2020, at UICC Abbas' request,

25   defendant AGBABIAKA picked up, from a location in New York State, the

26   rose gold and titanium Richard Mille RM 11-03 watch, which UICC Abbas

27   had purchased using the $230,000 wire by the Victim Businessperson to

28   Wells Fargo Account 2.

1    <u>Overt Act No. 30:</u>   On January 4, 2020, defendant ANIFOWOSHE and

2    UICC Abbas discussed a coconspirator whom defendant Abbas wanted to

3    transport the rose gold and titanium Richard Mille RM 11-03 watch to

4    UICC Abbas in the U.A.E.

5    <u>Overt Act No. 31:</u>   On January 4, 2020, at UICC Abbas' request,

6    defendant AGBABIAKA provided the rose gold and titanium Richard Mille

7    RM 11-03 watch to defendant FASHOLA.

8    <u>Overt Act No. 32:</u>   On January 4, 2020, defendant FASHOLA

9    provided the rose gold and titanium Richard Mille RM 11-03 watch to

10   UICC 5, to transport the watch to UICC Abbas.

11   <u>Overt Act No. 33:</u>   On January 4, 2020, UICC 5 transported the

12   rose gold and titanium Richard Mille RM 11-03 watch by airplane to

13   the U.A.E., where he hand-delivered it to UICC Abbas.

14   <u>Overt Act No. 34:</u>   On January 4, 2020, defendant VINCENT sent

15   UICC Abbas, through electronic messages, the phone number for a false

16   and fictitious "telephone banking" system, designed to induce the

17   Victim Businessperson to make additional fraudulent payments.

18   <u>Overt Act No. 35:</u>   On January 8, 2020, defendant VINCENT sent

19   UICC Abbas, through electronic messages, the phone number for a

20   different false and fictitious "telephone banking" system, which they

21   would later use to induce the Victim Businessperson to make

22   additional fraudulent payments.

23   <u>Overt Act No. 36:</u>   On January 8, 2020, defendant JUMA and UICC

24   Abbas discussed, through electronic messages, how much money they

25   would attempt to extract from the Victim Businessperson using the

26   "telephone banking" system.

27   <u>Overt Act No. 37:</u>   On January 8, 2020, defendant VINCENT

28   communicated with UICC Abbas, through electronic messages, about a

13

fake Wells Fargo banking website that he was creating with another coconspirator, designed to induce the Victim Businessperson to make additional fraudulent payments.

Overt Act No. 38:   On January 8, 2020, defendant VINCENT sent UICC Abbas, through electronic messages, information about a new "storyline" to induce the Victim Businessperson to make a payment of $575,000.

Overt Act No. 39:   On January 11, 2020, defendant FASHOLA discussed with UICC Abbas finding a bank account that could be used to receive an additional fraudulently induced payment from the Victim Businessperson.

Overt Act No. 40:   On January 13, 2020, after learning that defendant VINCENT contacted the Victim Businessperson to tell him/her that UICC Abbas was "fake," defendant JUMA and UICC Abbas discussed what to do to keep defendant VINCENT from interfering in the fraud scheme.

Overt Act No. 41:   On January 13, 2020, defendant KYARI and UICC Abbas spoke about a plan to arrest defendant VINCENT.

Overt Act No. 42:   On January 14, 2020, defendant FASHOLA and UICC Abbas communicated, through electronic messages, about a bank account that UICC Abbas could use to receive funds fraudulently obtained from the Victim Businessperson.

Overt Act No. 43:   On January 14, 2020, UICC 5 sent UICC Abbas the account information for TD Bank Account 2 of UICC 6, through electronic messages.

Overt Act No. 44:   On January 14, 2020, defendant AGBABIAKA told UICC Abbas, through electronic messages, that he could use the Capital One Account to receive a second wire transfer of $100,000.

1        Overt Act No. 45:   On January 14, 2020, UICC Abbas sent

2   defendant JUMA the account information for the Capital One Account

3   and TD Bank Account 2, through electronic messages.

4        Overt Act No. 46:   On January 16, 2020, UICC Abbas communicated

5   with defendant KYARI by electronic message and phone about arresting

6   defendant VINCENT and about paying "the team" for arresting defendant

7   VINCENT.

8        Overt Act No. 47:   On January 20, 2020, defendant KYARI sent

9   UICC Abbas electronic messages containing biographical information of

10  defendant VINCENT and a photograph of defendant VINCENT, and saying,

11  "We have arrested the guy . . .  He is in my Cell now [¶] This is his

12  picture after we arrested him today."

13       Overt Act No. 48:   On January 20, 2020, after receiving the

14  photograph of defendant VINCENT, UICC Abbas sent an electronic

15  message to defendant KYARI saying, "I want him to go through serious

16  beating of his life."

17       Overt Act No. 49:   On January 20, 2020, in response to

18  defendant KYARI's request for details about what defendant VINCENT

19  did "on audio," so that defendant KYARI would "know what to do," UICC

20  Abbas sent defendant KYARI an audio recording explaining how

21  defendant VINCENT had attempted to interfere in a fraud scheme and

22  steal a victim away from UICC Abbas.

23       Overt Act No. 50:   On January 20, 2020, UICC Abbas stated in

24  electronic messages to defendant KYARI, in regard to defendant

25  VINCENT, "Please sir I want to spend money to send this boy to jail,

26  let him go for a very long time."

27       Overt Act No. 51:   On January 20, 2020, UICC Abbas stated in

28  electronic messages to defendant KYARI, in regard to the arrest of

defendant VINCENT, "Let me know how I can send money to the team sir[,] let them deal with him like armed robber."

Overt Act No. 52:   On January 20, 2020, defendant KYARI sent an electronic message to UICC Abbas containing the account information for a bank account at a Nigerian bank, Zenith Bank, in the name of a person other than defendant KYARI himself, where UICC Abbas was to direct payment for the arrest and imprisonment of defendant VINCENT.

Overt Act No. 53:   Between February 5 and 7, 2020, defendant JUMA fraudulently induced the Victim Businessperson to send approximately seven wire transfers, totaling approximately $299,983.58, from the Qatari Bank Account to the Kenyan Bank Account.

Overt Act No. 54:   On February 14, 2020, after the Victim Businessperson confided to UICC Abbas that s/he had lost more than $1,000,000 in the fraud scheme and wrote, "I know that you think I am stupid but I trusted [defendant JUMA] and now I'm going bankrupt," UICC Abbas -- pretending to be "Malik" -- responded, "Wow ☹, over one million?," and falsely promised to try to help the Victim Businessperson.

Overt Act No. 55:   On February 17, 2020, using electronic messages, UICC Abbas provided the Victim Businessperson with the account information for the Capital One Account and the TD Bank Account 2, and instructed the Victim Businessperson to wire transfer $100,000 and $80,000 to the accounts, respectively, to purportedly facilitate payment of the $15 million loan to the Victim Businessperson.

Overt Act No. 56:   On March 3, 2020, after the Victim Businessperson sent UICC Abbas photographs of wire transfer confirmations showing transfers of $100,000 to the Capital One

Account and $80,000 to TD Bank Account 2, UICC Abbas, using electronic messages, sent the photograph of the wire transfer paid to TD Bank Account 2 to defendant FASHOLA.

Overt Act No. 57:   On March 3, 2020, defendant AGBABIAKA purchased a cashier's check of approximately $50,000 drawn from the Capital One Account and deposited it to TD Bank Account 1.

Overt Act No. 58:   On March 3, 2020, defendant AGBABIAKA withdrew approximately $15,000 in cash from the Capital One Account.

Overt Act No. 59:   On March 4, 2020, defendant AGBABIAKA sent a wire transfer of approximately $50,000 from TD Bank Account 1 to a bank account at Emirates NBD Bank, in the U.A.E.

Overt Act No. 60:   On March 5, 2020, defendant AGBABIAKA withdrew approximately $10,000 in cash from the Capital One Account.

Overt Act No. 61:   On March 7, 2020, defendant AGBABIAKA withdrew approximately $7,000 in cash from the Capital One Account.

1

COUNT TWO

2

[18 U.S.C. § 1956(h)]

3      17.   The Grand Jury re-alleges and incorporates here paragraphs

4 1 through 12 of the Introductory Allegations of this Indictment.

5 A.   OBJECTS OF THE CONSPIRACY

6      18.   Beginning no later than on or about November 11, 2019, and

7 continuing until on or about April 26, 2020, in Los Angeles County,

8 within the Central District of California, and elsewhere, defendants

9 ABDULRAHMAN IMRAAN JUMA, also known as ("aka") "Abdul," aka "Rahman"

10 ("JUMA"), KELLY CHIBUZO VINCENT, aka "Vincent Kelly Chibuzo"

11 ("VINCENT"), ABBA ALHAJI KYARI ("KYARI"), RUKAYAT MOTUNRAYA FASHOLA,

12 aka "Morayo" ("FASHOLA"), BOLATITO TAWAKALITU AGBABIAKA, aka

13 "Bolamide" ("AGBABIAKA"), and YUSUF ADEKINKA ANIFOWOSHE, aka "AJ,"

14 aka "Alvin Johnson" ("ANIFOWOSHE"), and unindicted coconspirator #1

15 ("UICC 1"), unindicted coconspirator Ramon Olorunwa Abbas ("UICC

16 Abbas"), unindicted coconspirator #3 ("UICC 3"), unindicted

17 coconspirator #4 ("UICC 4"), unindicted coconspirator #5 ("UICC 5"),

18 and unindicted coconspirator #6 ("UICC 6"), together with others

19 known and unknown to the Grand Jury, knowingly conspired:

20           a.   to conduct and attempt to conduct financial

21 transactions, affecting interstate and foreign commerce, knowing that

22 the property involved in the financial transactions represented the

23 proceeds of some form of unlawful activity, which, in fact, involved

24 the proceeds of specified unlawful activity -- namely, wire fraud, in

25 violation of Title 18, United States Code, Section 1343 -- and

26 knowing that the transactions were designed in whole and in part to

27 conceal and disguise the nature, location, source, ownership, and

28

18

1  control of the proceeds, in violation of Title 18, United States

2  Code, Section 1956(a)(1)(B)(i);

3        b.   to transport, transmit, and transfer, and attempt to

4  transport, transmit, and transfer, funds from a place in the United

5  States to a place outside of the United States, knowing that the

6  property involved in the financial transactions represented the

7  proceeds of some form of unlawful activity, and which property was,

8  in fact, the proceeds of specified unlawful activity -- namely, wire

9  fraud, in violation of Title 18, United States Code, Section 1343 --

10 and knowing that the transportation, transmittal, and transfer were

11 designed in whole and in part to conceal and disguise the nature,

12 location, source, ownership, and control of the proceeds, in

13 violation of Title 18, United States Code, Section 1956(a)(2)(B)(i);

14 and

15        c.   to engage and attempt to engage in monetary

16 transactions involving criminally derived property of a value greater

17 than $10,000, affecting interstate and foreign commerce, which was

18 derived from specified unlawful activity -- namely, wire fraud, in

19 violation of Title 18, United States Code, Section 1343 -- and

20 knowing that the funds represented the proceeds of some form of

21 unlawful activity, in violation of Title 18, United States Code,

22 Section 1957.

23 B.   THE MANNER AND MEANS OF THE CONSPIRACY

24      19.   The objects of the conspiracy were to be accomplished, in

25 substance, as follows:

26        a.   The Grand Jury re-alleges and incorporates here

27 paragraphs 15.a through 15.n of Section B of Count One of this

28 Indictment.

C.    OVERT ACTS

20.   In furtherance of the conspiracy, and to accomplish its objects, defendants JUMA, VINCENT, KYARI, FASHOLA, AGBABIAKA, and ANIFOWOSHE, and UICC 1, UICC Abbas, UICC 3, UICC 4, UICC 5, and UICC 6, together with others known and unknown to the Grand Jury, on or about the dates set forth below, committed and caused to be committed various overt acts, in the Central District of California and elsewhere, including, but not limited to, the following:

Overt Act Nos. 1-61:  The Grand Jury re-alleges and incorporates here Overt Act Number 1 through Overt Act Number 61 of Section C of Count One of this Indictment.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>COUNT THREE</u>

[18 U.S.C. §§ 1028A(a)(1); 2(a)]

21.   The Grand Jury re-alleges and incorporates here paragraphs 1 through 12 of the Introductory Allegations of this Indictment.

22.   Beginning no later than on or about November 11, 2019, and continuing until on or about April 26, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendants ABDULRAHMAN IMRAAN JUMA, also known as ("aka") "Abdul," aka "Rahman," KELLY CHIBUZO VINCENT, aka "Vincent Kelly Chibuzo," ABBA ALHAJI KYARI, RUKAYAT MOTUNRAYA FASHOLA, aka "Morayo," BOLATITO TAWAKALITU AGBABIAKA, aka "Bolamide," and YUSUF ADEKINKA ANIFOWOSHE, aka "AJ," aka "Alvin Johnson," together with others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly transferred, possessed, and used, without lawful authority, a means of identification that each defendant knew belonged to another person, during and in relation to a felony violation of Title 18, United States Code, Section 1349, Conspiracy to Commit Wire Fraud, as charged in Count 1.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count One of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)   all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

(b)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982]

1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of any defendant's conviction of the offenses set forth in Count Two of this Indictment.

2.   Any defendant so convicted shall forfeit to the United States of America the following:

(a)   Any property, real or personal, involved in such offense, and any property traceable to such property; and

(b)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), any defendant so convicted shall forfeit substitute property, if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.  Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in

committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.

1                    FORFEITURE ALLEGATION THREE

2                    [18 U.S.C. §§ 982 and 1028]

3        1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal

4   Procedure, notice is hereby given that the United States of America

5   will seek forfeiture as part of any sentence, pursuant to Title 18,

6   United States Code, Sections 982 and 1028, in the event of any

7   defendant's conviction of the offense set forth in Count Three of

8   this Indictment.

9        2.    Any defendant so convicted shall forfeit to the United

10  States of America the following:

11            (a) All right, title and interest in any and all property,

12  real or personal, constituting, or derived from, any proceeds

13  obtained, directly or indirectly, as a result of the offense;

14            (b)   Any personal property used or intended to be used to

15  commit the offense; and

16            (c)   To the extent such property is not available for

17  forfeiture, a sum of money equal to the total value of the property

18  described in subparagraphs (a) and (b).

19       3.    Pursuant to Title 21, United States Code, Section 853(p),

20  as incorporated by Title 18, United States Code, Sections 982(b) and

21  1028(g), any defendant so convicted shall forfeit substitute

22  property, up to the total value of the property described in the

23  preceding paragraph if, as the result of any act or omission of said

24  defendant, the property described in the preceding paragraph, or any

25  portion thereof: (a) cannot be located upon the exercise of due

26  diligence; (b) has been transferred, sold to or deposited with a

27  third party; (c) has been placed beyond the jurisdiction of the

28  court; (d) has been substantially diminished in value; or (e) has

1  been commingled with other property that cannot be divided without

2  difficulty.

3                                           A TRUE BILL

4

5                                           _____/S/_____

6                                           Foreperson

7  TRACY L. WILKISON
   Acting United States Attorney

8

9

10 CHRISTOPHER D. GRIGG
   Assistant United States Attorney

11 Chief, National Security Division

12 CAMERON L. SCHROEDER
   Assistant United States Attorney

13 Chief, Cyber & Intellectual
       Property Crimes Section

14

15 ANIL J. ANTONY
   Assistant United States Attorney

16 Deputy Chief, Cyber &
       Intellectual Property Crimes
       Section

17

18

19

20

21

22

23

24

25

26

27

28